# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TIMOTHEOUS THOMPSON,

      Petitioner,

v.                                                           CIV 05-1121 BB/WPL

JAMES JANECKA, WARDEN, AND
ATTORNEY GENERAL PATRICIA
MADRID,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

     Timotheous Thompson was convicted of aggravated burglary and breaking and entering. He was sentenced to thirteen years in prison, followed by two years of parole. (Ex. A.)[1] After unsuccessfully pursuing a direct appeal and state habeas relief, he filed a *pro se* Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) Although they concede that Thompson exhausted his state-court remedies, Respondents have filed a Motion to Dismiss and Memorandum in Support, arguing that his claims are either procedurally defaulted or do not satisfy the standard for federal habeas relief. (Docs. 9, 10, 11.) Having considered the motion and memorandum, Thompson's response, and the state court record, I recommend that the motion be granted for the reasons explained below. Thompson has also filed a "Motion to Court to Enforce Its Order." (Doc. 15.) I recommend that this motion be denied.[2]

---

[1] All exhibit references are to Respondents' answer, which was docketed as Document 11.

[2] Because all of Thompson's claims can be resolved on the basis of the record before this Court, I find it unnecessary to conduct an evidentiary hearing. *See Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

**FACTUAL BACKGROUND**

Tonya Ligon testified that she lived with Thompson for six years. (Tr. 66-67.) According to Ligon, they broke up while they were living on East Idaho Street in Las Cruces. (Tr. 67-68.) With Thompson's assistance, she and her children moved to a house on Bellamah Drive. (Tr. 66, 68-70.) Thompson asked if he could move in with her at the new house. She refused, but did allow him to stay in the detached garage temporarily. (Tr. 70, 259.) After less than two weeks of this arrangement, Ligon began asking Thompson to move out of the garage. She claimed that when she asked him to leave one time, he put a gun to her head and threatened her. (Tr. 72-73.) The next day, she called the police and took steps toward getting a restraining order. (Tr. 77.) She also changed the lock on the door to the garage. (Tr. 85, 172-73, 200.) The following morning, she found Thompson sleeping in the garage. (Tr. 168.) After telling him again to leave, Ligon left for the weekend. (Tr. 82-83, 173-76.) When she returned late Monday night, she noticed lights on in the house and summoned the police. (Tr. 84-85.) Police officers caught Thompson apparently coming out of the back door to the house. (Tr. 86, 226-27, 258-61.) Inside the house were several notes written by Thompson with knives placed on top of them. (Tr. 87, 228-29.) Money and food were missing from the house. (Tr. 92.)

Police officers testified that the lock on the garage door was damaged and appeared to have fresh pry marks. (Tr. 230-31, 243, 277-78, 293-94.) Thompson admitted to one of the officers that he placed the notes in the house. (Tr. 296.) The officer asked Thompson about the pry marks, but Thompson had no explanation as to how they got there. (Tr. 318.)

**STANDARD OF REVIEW**

To the extent that the state courts decided the merits of Thompson's claims, this Court may

not grant a writ of habeas corpus unless the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In other words, the writ may issue if the state courts arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Court has on a set of materially indistinguishable facts, or unreasonably applied the correct governing legal principle to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The writ may also issue if the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

## EXCULPATORY EVIDENCE

In his first issue, Thompson asserts that he was denied a fair trial by the trial judge's "not ruling on exculpatory evidence/statement." (Doc. 1 at 6A.) In his second issue, he asserts that he was denied a fair trial "by misconduct of the prosecution in his willful disregard to exculpatory evidence/statements." (Doc. 1 at 6B.) Both of these issues stem from Thompson's belief that he could not be guilty because he had a six-year relationship with Ligon and in fact lived at the address that he was convicted of burglarizing and breaking and entering. He notes that the police officers' testimony indicated that a "domestic situation" existed between Ligon and him, and a juror was excused because she was a cashier at a store where they had frequently shopped together. (Doc. 1 at 6A-6B.) Thompson claims that shortly before he allegedly committed the crimes, Ligon went to the Rescue Mission, where he was staying, to persuade him to return to their residence. He also notes that he was charged with aggravated assault against a household member because of Ligon's allegation that he pointed a gun at her. Thompson seems to think that the trial judge should have dismissed the charges against him because of this "exculpatory evidence." Additionally, he accuses

3

the prosecution of failing to present evidence regarding the existence of the "domestic situation" between Ligon and him.

### *Trial Judge's Failure to Rule on Exculpatory Evidence*

On direct appeal, Thompson did not make the exact exculpatory evidence argument that he makes in his first issue in his federal habeas application, but he did make a closely related argument: He asserted that the evidence was insufficient to support his convictions for burglary and breaking and entering. (Ex. C, E.) The New Mexico Court of Appeals rejected this argument. (Ex. F.)

In his state habeas application, Thompson made the same argument he makes here. (Ex. J.) The habeas judge characterized the issue as a complaint that the trial judge erred by excluding exculpatory evidence. The judge held that Thompson was not entitled to post-conviction relief on this ground because he failed to raise it on direct appeal. (Ex. K at 1.)[3]

When a state court has held that an issue was procedurally defaulted, this court generally should not consider the issue if the default constitutes an independent and adequate state procedural ground. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). In New Mexico, issues not raised on direct appeal are waived for purposes of post-conviction relief. This is an independent and adequate state procedural ground. *See Jackson*, 143 F.3d at 1318. However, construing Thompson's *pro se* petition liberally, his first issue is arguably essentially the same as the issue raised and decided on direct appeal. Therefore, I will consider the issue.

In rejecting Thompson's argument that the evidence was insufficient to support his

---

[3] The judge who considered the habeas petition was not the judge who presided over Thompson's trial.

convictions, the New Mexico Court of Appeals applied the correct standard for evaluating the sufficiency of the evidence. (Ex. F at 1-2); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Rojo*, 971 P.2d 829, 835-36 (N.M. 1998). The court properly compared the evidence to the statutory elements of the offenses. (Ex. F. at 2-4); *see Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2544 (2005); *see also* N.M. STAT. ANN. §§ 30-14-8, 30-16-4. Regarding the burglary conviction, the court held that Ligon's testimony that Thompson entered her house without permission and without a key was sufficient to support the jury's conclusion that his entry into the house was not authorized. (Ex. F at 3.) As for the breaking and entering conviction, the court noted that there was evidence that Ligon had asked Thompson to move out of the garage, Ligon had changed the lock on the garage door, and the lock was subsequently damaged. (Ex. F at 2, 4.) The court acknowledged that Ligon and Thompson had lived together for many years. (Ex. F at 2.)

Having reviewed the record, I conclude that the court's decision was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent. I also conclude that the decision was not based on an unreasonable determination of the facts in light of the evidence presented. I am aware of no authority to support Thompson's belief that his relationship with Ligon precluded his convictions for burglarizing her house and breaking and entering into her garage, given the evidence that he was not authorized to be in the house or garage when the crimes were committed.

### *Prosecution's Disregard of Exculpatory Evidence*

Although Thompson did not raise his complaint about the prosecution on direct appeal, he did raise it in his state habeas petition. (Ex. J.) The habeas judge held that Thompson was not entitled to relief on this ground because the prosecution was under no obligation to present evidence

5

on Thompson's behalf and Thompson could not claim that the prosecution concealed the evidence about the domestic situation from him. The judge also noted that the court of appeals found the evidence sufficient to support the convictions and that he would not revisit that issue. (Ex. K at 1-2.)

The prosecution's failure to disclose evidence cannot deprive a defendant of a fair trial if the evidence was known and available to the defendant before trial. *See Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003). Thompson was certainly aware of his own relationship with Ligon. Moreover, although some of the specific evidence cited by Thompson was not presented at trial, it was undisputed at trial that Thompson and Ligon had a long-term, live-in relationship. The state habeas judge's rejection of this issue was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Thompson argues that his trial counsel was ineffective. To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

Thompson's primary complaint is that counsel failed to present evidence regarding his six-year relationship with Ligon or evidence that he lived at the residence he was convicted of burglarizing

and breaking and entering. He also asserts that the door locks he was accused of damaging were damaged when he and Ligon moved into the residence. He claims that he told counsel this and further told her that the landlord would confirm it, yet counsel did not call the landlord as a witness. Noting that Ligon herself testified that she and Thompson had a six-year relationship, the state habeas judge held that Thompson failed to show that counsel prejudiced his defense. (Ex. K at 2.)

As alluded to by the state habeas judge, there was ample evidence before the jury regarding the nature of the relationship between Ligon and Thompson. Therefore, his rejection of Thompson's argument that counsel should have presented additional evidence was not contrary to, or an unreasonable application of, *Strickland*.

The state habeas judge did not specifically address Thompson's complaint about the door locks. The condition of the lock on the door to the house was not significant because the burglary conviction did not require a breaking, but rather only an unauthorized entry. (Ex. F at 2.) It was undisputed that Thompson was not authorized to enter the house on the night in question. Dismantling the garage door latch was an element of the breaking and entering charge. (Ex. F at 4.) But the condition of the lock when Ligon moved into the residence was not significant because she testified that she changed the lock the night before Thompson broke in. Evidence that the locks were already damaged would have been inconsistent with Thompson's inability to explain the damage in his statement to the police. Furthermore, a review of the record reveals that counsel vigorously challenged the allegation that Thompson damaged the lock to the garage door. Rather than contending that the lock was already damaged, she attempted to cast doubt on the contention that there was any damage to the lock. This strategy was consistent with Thompson's inability to explain the damage to the lock. Counsel emphasized the police officers' failure to photograph the damaged

lock to the garage door, even though they photographed the other significant evidence at the scene. (Tr. 293-94, 363.)  She also emphasized inconsistencies in the testimony regarding exactly how the lock was damaged and as to whether the bay door to the garage may have been unlocked and whether Thompson could have gained access to the garage through that door. (Tr. 230-31, 236-42, 362-63.) Although this strategy failed, it was not necessarily unreasonable.  Moreover, Thompson has not shown a reasonable probability that the result of the proceeding would have been different if counsel had presented evidence that the locks were damaged when Ligon moved into the residence.

Besides the complaints just discussed, Thompson's application includes a list of sixteen additional complaints about trial counsel.  Although his state habeas petition contained the same list, the habeas judge did not address these complaints.  (Ex. J at 5A, K.)

All of the additional sixteen complaints are conclusory and thus insufficient to establish ineffective assistance.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  For example, Thompson asserts without elaboration that counsel did not prepare a proper defense, made no investigation, made no contact with his witnesses, did not make it clear to the jury that he was living at the residence, did not point out evidence proving his innocence, and allowed him to be sent to prison.

Furthermore, Thompson has not demonstrated a reasonable probability that the result of the proceeding would have been different but for the alleged deficiencies.  This is particularly true regarding his complaints that counsel did not give him copies of discovery, only spoke with him once before trial, quit before sentencing, and did not prepare the docketing statement.

Some of Thompson's complaints reflect a misunderstanding of what happened at trial. Although Thompson asserts that counsel made no objections, the record reveals that she did object

during trial. (*E.g.*, Tr. 70, 81, 88, 200.) Although Thompson complains that counsel did not advise the jury of "stepping down" on the charges to criminal trespassing, the record reveals that the jury was instructed on trespassing as a lesser included offense and counsel argued to the jury that Thompson was only guilty of trespassing at most. (Doc. 1 at 5A, RP 82, 85, Tr. 359.) Thompson also complains that counsel never mentioned the merger of aggravated burglary and breaking and entering. The merger doctrine does not apply to these offenses because they were based on different actions occurring at different times related to different structures. *See Swafford v. State*, 810 P.2d 1223, 1232-34 (N.M. 1991).

Thompson's remaining complaints reflect a misunderstanding about the role of counsel. For example, he complains that counsel strongly advised him not to testify by telling him that he faced twenty-one years in prison. Although the client has the right to decide whether to testify, counsel has a duty to offer advice on the matter. *See* Rules 16-102(A), 16-201 NMRA. Thompson does not contend that counsel's advice regarding his sentence was wrong. Thompson also complains that counsel refused to ask the questions he wanted her to ask during trial. Counsel is not required to follow her client's advice about how to examine witnesses. *See State v. Singleton*, 28 P.3d 1124, 1129 (N.M. Ct. App. 2001); Rule 16-102(A) NMRA. Finally, Thompson complains that counsel agreed with the prosecution. The record reveals that when counsel realized that she did not have a good faith basis in law to counter the prosecution's position, she conceded that fact. (Tr. 218-21.) In this way, counsel complied with her duty of candor to the court. *See* Rules 16-301, 16-303 NMRA.

To summarize, after considering all of Thompson's allegations of ineffectiveness, including his conclusory list of complaints, I conclude that he has not satisfied his burden under *Strickland* to

demonstrate either that counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that the result would have been different but for counsel's conduct.

### ELEVEN-MEMBER JURY

In his final issue, Thompson contends that his right to due process was violated because he was tried by eleven jurors instead of twelve. At the conclusion of Ligon's direct testimony, a juror informed the court that she would be uncomfortable deciding the case because she had been a cashier at a store where Thompson and Ligon frequently shopped. (Tr. 100-02.) The trial judge excused the juror without objection from Thompson's counsel. (Tr. 103-04.) Thompson asserts that the trial proceeded with an eleven-member jury because no alternate juror was selected. Thompson raised this issue in his state habeas petition, and the judge held that it was waived because he did not object at trial or raise the issue on direct appeal. (Ex. K at 2-3.)[4]

Thompson had no right under the United States Constitution to a twelve-member jury. *See Burch v. Louisiana*, 441 U.S. 130, 137 (1979); *Williams v. Florida*, 399 U.S. 78, 86 (1970); *Mendrano v. Smith*, 797 F.2d 1538, 1542 (10th Cir. 1986); *see also Davis v. Champion*, No. 93-5170, 1994 WL 149109, at *1-*2 (10th Cir. April 26, 1994) (unpublished) (specifically holding in a factually similar habeas proceeding that the petitioner had no federal right to a twelve-member jury). Generally, federal habeas relief can only be granted for a violation of federal law. *See* 28 U.S.C. §

---

[4] Although the state habeas judge and Respondents have accepted Thompson's contention that there were only eleven jurors, it is not clear from the record that this contention is accurate. After the trial judge excused the juror, the prosecutor stated, "The alternate is the 12th juror now." Defense counsel remarked that it was a "[g]ood thing we had two alternates now." The judge then stated, "Now they're both going, so now we have no alternate." (Tr. 103.) When the jury was polled after delivering its verdict, the transcript reflects that twelve jurors answered. (Tr. 384-85.) Because no one has disputed that there were only eleven jurors, I will assume *arguendo* that was the case.

2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). To obtain federal habeas relief for the denial of a state-based right to a twelve-person jury, Thompson must show that the denial was arbitrary, unprincipled, unreasonable, or had so little basis in law and fact as to constitute a denial of due process. *See United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 670 (7th Cir. 1980) (considering the denial of a state right to a twelve-member jury); *see also Davis*, 1994 WL 149109, at *2 (citing *Burnett*).

Although New Mexico apparently recognizes a right to a twelve-member jury, that right can be waived. *See State v. Pendley*, 593 P.2d 755, 757-58 (N.M. Ct. App. 1979); *see also Singleton*, 28 P.3d at 1128-29 (holding that defendant may be bound by defense counsel's waiver of objection to composition of jury). Here, the state habeas judge held that Thompson waived the right by failing to object or to raise the issue on direct appeal. As noted above, the failure to raise an issue on direct appeal constitutes an independent and adequate state procedural ground that precludes this Court from considering the issue. Thompson has not demonstrated cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default. *See Coleman*, 501 U.S. at 750; *Jackson*, 143 F.3d at 1317. Moreover, even if I ignored his failure to raise the issue on direct appeal, Thompson has not demonstrated that the trial judge's decision to proceed with an eleven-member jury was arbitrary, unprincipled, unreasonable, or had so little basis in law and fact as to constitute a denial of due process.

## MOTION TO COURT TO ENFORCE ITS ORDER

Thompson has filed a "Motion to Court to Enforce Its Order." After scrutinizing this motion, I cannot determine what relief Thompson is seeking. He notes that in my Order for Briefing, I set a due date for his response to the motion to dismiss, as well as a due date for Respondents' reply to

11

his response. Thompson might believe that Respondents were required to file a reply. However, the Order for Briefing merely set out a date for the reply, "if any," to be filed. (Doc. 12.) It is also possible that Thompson filed his motion to obtain a ruling on his application. If so, the motion will be rendered moot by the filing of these Proposed Findings and Recommended Disposition.

### RECOMMENDATION

I recommend that:

1) the Motion to Court to Enforce Its Order (Doc. 15) be denied;

2) the Motion to Dismiss (Doc. 9) be granted;

3) the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 be denied; and

4) this cause be dismissed with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE